# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHAWN DEWAYNE PARKS-EL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| | ) | 1:22CV514 |
| v. | ) | |
| | ) | |
| MR. KENNETH DIGGS, | ) | |
| | ) | |
| Respondent. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, challenges his prison disciplinary conviction by way of a Petition brought pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) Respondent has filed an answer (Docket Entry 7), a motion for summary judgment (Docket Entry 8), and a supporting brief (Docket Entry 9). Petitioner then filed a response. (Docket Entry 11.) The Court also ordered additional briefing from Respondent, and gave Petitioner the opportunity to supplement as well, if he so chose. (4/12/2023 Text Order.) Respondent filed a supplemental brief (Docket Entry 13), but Petitioner did not and the time to do so has expired. This matter is now ready for a ruling.

## Background

Petitioner is a prisoner of the State of North Carolina.[1] In his § 2254 petition he only challenges a December 2021, prison disciplinary conviction for the A-14 offense of participating in a security risk group activity, that is, the sovereign citizen movement, while

---

[1] *See North Carolina Department of Adult Correction Offender Public Information available at* https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (searching prisoner number 0525383 listed in Petition).

incarcerated in Albemarle Correctional Institution. (Docket Entry 2, §§ 1-9 & Grounds One and Two.) Petitioner's punishment included the loss of twenty days of sentence reduction credits, reclassification as a security risk group prisoner, twenty-eight days in segregation,[2] and a ten-dollar administration fee. (*Id.*, § 3; Docket Entry 3 at 1-2.) In late December of 2021, the conviction was upheld on administrative appeal. (Docket Entry 2, § 9.) On July 1, 2022, Petitioner filed his federal habeas petition in this Court. (Docket Entry 2.)

### **Petitioner's Grounds**

Read liberally, Petitioner broadly asserts[3] that: (1) the prison violated his due process rights during the prison disciplinary conviction, (2) the relevant prison disciplinary conviction violated his religious rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and (3) the prison violated his rights against cruel and unusual punishment. (Docket Entries 2 (Grounds One and Two) and 3.) The relief Petitioner seeks is the restoration of his twenty days of sentence reduction credits and the expungement of the A-14 infraction from his disciplinary record. (Docket Entry 2 at 15.) As explained below, these allegations warrant no relief.

---

[2] To the extent Petitioner seeks to challenge his conditions of confinement, he may do so (if at all) in a civil rights action pursuant to 42 U.S.C. § 1983. *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991). Additionally, the Court notes that absent an allegation of a quantum change in custody (which is not present in this case), challenges to custody classification are not cognizable in a federal habeas petition. This is because the petitioner does not challenge the basic fact or duration of his imprisonment, which is the essence of habeas, when challenging his custody level. *See Rodriguez v. Streeval*, No. 7:20CV373, 2020 WL 3840424, at *2 & n3 (W.D. Va. July 8, 2020); *Oden v. Wilson*, No. 3:17CV286, 2018 WL 359478, at *5 (E.D. Va. Jan. 10, 2018). In light of this, the Court has not addressed any allegations related to Petitioner's conditions of confinement.

[3] Petitioner's arguments have been reordered for the purposes of judicial efficiency.

## Factual Background

As alluded to earlier, Petitioner challenges a prison disciplinary determination in which he was found guilty of violating a Class A disciplinary offense (A-14), prohibiting an inmate from "Participat[ing] in, or organiz[ing], whether individually or in concert with others, any gang or Security Risk Group (SRG), or participat[ing] in any activity or behavior associated with a Security Risk Group." (Docket Entry 9, Ex. 3 at 2.)

Here, the Record of Hearing for the December 2, 2021, disciplinary conviction states:

> ON 11/17/21 AT 0910 HRS, SRG INTELLIGANCE OFFICER RADOSEVIC WAS PACKING OFFENDER SHAWN PARKS #0525383 PROPERTY AND FOUND PAPERS. THAT ARE RELATED TO THE SRG GROUP SOVERIGN CITIZENS.
>
> OFFENDER PARKS STATES ON A DC-138B AND DURING THE HEARING H[E] HAS CONSTITUTIONAL RIGHT TO PROCLAIM HIS NATIONALITY AS A MORRISH [*sic*] AMERICAN. HE STATES THAT THE WORD SOVEREIGN CAN BE FOUND IN THE NC CONSTITUTION AS A RIGHT PEOPLE HAVE. HE STATES THAT IT IS NOT GANG OR GANG ACTIVITY. OFFENDER PARKS SAYS HE IS A MOORISH AMERICAN BY BIRTH RIGHT AND NOT A GANG MEMBER AND IT IS DISRESPECTFUL TO BE LABELED AND TREATED AS SUCH.
>
> OFFENDER PARKS' REQUEST FOR A STATEMENT TO BE COLLECTED FROM THE [*sic*] SGT BERTHEA FROM SCOTLAND IS BEING DENIED DUE TO SGT.BERTHEA NOT HAVING FIRST HAND KNOWLEDGE OF THIS INCIDENT.
>
> PHOTO COPIES HAVE BEEN ATTACHED TO THE PACKAGE.
>
> BASED ON THE REPORTING PARTY'S STATEMENT AND INVESTIGATING OFFICER'S REPORT, A FINDING OF GUILTY IS ENTERED FOR OFFENSES A-14

> SANCTIONS IMPOSED TO DETER FUTURE ACTS OF THIS NATURE.
> COPY OF RECORD OF HEARING, SANTIONS IMPOSED, AND APPEAL FORM GIVEN TO INMATE BY DHO.
> DISC. HISTORY CONSIDERED WHEN IMPOSING SANCTIONS.

(Docket Entry 9, Ex. 1 at 12.)[4] Petitioner's disciplinary hearing packet also contains the material deemed to be related to the sovereign citizen movement. (*Id.* at 20-29.) As a result of being found guilty of the A-14 offense, the punishment included the loss of twenty days of good time credit which Petitioner had accrued. (*Id.* at 10.)

### **Standard of Review**

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Nonetheless, certain procedural safeguards apply when the loss of good time credits are at issue, as inmates have a protected liberty interest in statutorily provided good time credits. *See id.* at 557.

The Supreme Court has set out the minimum requirements for due process in prison disciplinary hearings where such an interest is implicated: (1) giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing; (2) providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action; (3) allowing the prisoner to call witnesses and present documentary

---

[4] Petitioner had more than three dozen infractions (including multiple disobey order infractions), dating back to 2005 at the time of the A-14 offense. *See North Carolina Department of Adult Correction Offender Public Information available at* https://webapps.doc.state.nc.us/opi/offendersearch.do?method=view (searching prisoner number 0525383 listed in Petition).

evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals; (4) permitting the prisoner the aid of a fellow prisoner or staff member, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner can collect and present the evidence necessary for an adequate comprehension of the case; and, (5) providing impartial fact finders. *See id.* at 563-72.

In addition, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985) (citation, quotation omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the [DHO]." *Id.* (citation omitted). Finally, relief may still be denied if the petitioner is unable to show that an alleged constitutional violation had "substantial and injurious effect or influence" on the factfinder's determination of guilt. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *see also Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004); *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006).

## I. Due Process

Petitioner contends that the prison violated his due process rights during the prison disciplinary conviction. (Docket Entry 2, Ground Two.) This ground has no merit.

More specifically, the Record of Hearing and disciplinary appeal package in this case show that Petitioner received his due process rights. (Docket Entry 9, Ex. 1.) He received written notice of the A-14 offense (*id.* at 13, 18), but waived his right to 24-hours written notice before meeting the hearing officer, and also had an opportunity to present statements

5

in his defense (*id.* at 19). Petitioner did not request live witnesses or seek staff assistance.[5] (*Id.*)

Petitioner's disciplinary hearing packet also contains a statement from Security Risk Group Intelligence Officer Scott Radosevic stating that:

> On 11-17-21 at 910hrs, I Security Risk Group Intelligence Officer Radosevic assisted in packing the property [o]f Offender Parks. In his property I found papers that in my expertise is gang related to the security risk group Severin [Sic] Citizens. I have made copies of the papers and attached them to the write ups. I also high lighted so[me] portion to show what shows he is an active member of this group. The contraband is stored in the contraband Locker. End of Statement.

(*Id.* at 17.)

Petitioner also submitted the following written statement:

> I have a right [a] constitutional right to proclaim my nationality as a Moorish American National. If you read the preamble of the North Carolina Constitution you will see the word sovereign mentioned as a right the people or citizen have. But to try and turn it around to a gang or gang activity is total unconstitutional[,] you had radical so called sovereign groups that try to overthrow the government and that [is] something totally different. But I'm only a Moorish American by birthright and not a gang member and its very disrespectful to be labeled or treated as such behind people being ignorant and not reading their [own] North Carolina Constitution. I'm requesting a statement from a real SRG Sgt from Scotland Correctional[,] Mr. Berthea[,] and he can verify who I am and what I stand for.

(*Id.* at 19)

Petitioner also received a written statement of the impartial factfinder giving the evidence relied upon and the reasons for the disciplinary action, which is set forth in the

---

[5] Petitioner did request a statement from a correctional officer from the state facility in which he had previously been incarcerated, but that request was reasonably denied because the proposed witness lacked firsthand knowledge. (Docket Entry 9, Ex. 1, at 12 and 19.)

6

Factual Background above. (*Id.* at 12.) The DHO's findings are also supported by some evidence, *i.e.*, the materials found in Petitioner's possession supporting the conclusion that he was participating in a security risk group, the sovereign citizen movement. By way of non-exclusive example, the documents found in Petitioner's possession while incarcerated include statements identifying him as "a natural, freeborn sovereign individual, without subjects. I am neither subject to any entity anywhere, nor is any entity subject to me. I neither dominate anyone, nor am I dominated."; "I may voluntarily choose to comply with the 'laws' which others attempt to impose upon me, but no such 'laws,' nor their 'enforcers,' have any authority over me."; "I have not committed any crime, and am therefore not subject to any penalty," "'Constitution': The document supposedly setting forth foundations of a 'country' and its 'government,' has no inherent authority or obligation. . . . such a document is inapplicable to me"; and "There are some immature people with mental imbalances . . . who masquerade as 'government,' and call the noises and scribbles that emanate from their mouths and pens 'the law' which 'must be obeyed,' just because they alter definitions of words in their 'law' books to their supposed advantage doesn't mean I accept those definitions." (*Id.* at 20, 23-24.) The materials in Petitioner's possession also included pages instructing others on how to engage in similar sovereign citizen behaviors, as well as the form intended to be used to disavow legal obligations and governmental authorities. (*Id.* at 26-29.) Therefore, Petitioner's prison disciplinary proceeding satisfied due process requirements.

Petitioner's arguments to the contrary are not persuasive. Petitioner asserts that he did not receive a recounting of the evidence Respondent relied upon in finding him in violation of prison rules. (Docket Entry 2, Ground Two.) This is, however, rebutted by the record.

Respondent recounted the evidence the hearing officer reviewed when rendering a verdict. (*See* Docket Entry 9, Ex. 1 at 12, 13-29.) And, indeed, Petitioner attached this recounting to his federal habeas petition. (Docket Entry 3, Ex. 2.) Additionally, to the extent Petitioner claims Respondent fabricated evidence to convict him, the record belies this claim just as with his "recounting" claim above. (Docket Entry 9, Ex. 1 at 12, 17, 20-29.) Indeed, a copy of Sgt. Radosevic's testimony and a photocopy of the problematic documents were both included in the disciplinary packet. (*Id.* at 17-29.) Petitioner also asserts that he did not have an adequate chance to be heard or to refute findings made at the disciplinary hearing. (Docket Entry 2, Ground Two.) However, as demonstrated above, neither of these allegations is borne out by the record. (Docket Entry 9, Ex. 1 at 12, 14, 19.) Respondent did not violate Petitioner's due process rights.

Last, despite Petitioner's arguments to the contrary (Docket Entry 3 at 6-8), A-14 is not void for vagueness. "It is a basic principle of due process that an enactment is void for vagueness if its *prohibitions* are not clearly defined." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289-90 (1982) (citation omitted). The doctrine requires that "a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawrence*, 461 U.S. 352, 357 (1983). Importantly, as relevant here, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citation omitted). Beyond this, "'the law requires less in the way of notice' on inmates who are subject to prison rules, and 'places a greater burden on the individual to make inquiry or ask permission before

acting' while in custody." *Mathews v. Warden*, No. 7:21CV00609, 2022 WL 4460007, at *5 n.9 (W.D. Va. Sept. 26, 2022) (quoting *Meyers v. Alldredge*, 492 F.2d 296, 311 (3d Cir. 1974))."Because it is nearly impossible for prison authorities to anticipate, through a narrowly drawn regulation, every conceivable form of misconduct which threatens prison security, [the court] has reject[ed] the view that the degree of specificity required of [prison] regulations is as strict in every instance as that required of ordinary criminal sanctions." (*Id.* quoting *Patel v. Zenk*, 447 Fed. App'x 337, 340 (3d Cir. 2011)) (internal quotes omitted).

In this case, the relevant prison disciplinary offense is not void-for-vagueness. An ordinary person can understand what conduct is prohibited by A-14 and it does not encourage arbitrary and discriminatory enforcement. More specifically, the provision states that no prisoner shall "[p]articipate in, or organize, whether individually or in concert with others, any gang or Security Risk Group (SRG), or participate in any activity or behavior associated with a Security Risk Group." (Docket Entry 9, Ex. 3 at 3.) The language is plain: offenders may not participate in a security risk group, that is, a group that risks the security of the prison system.

Moreover, any objection that A-14 does not sufficiently define the term "Security Risk Group" so an ordinary person would know that they are prohibited from participating in the sovereign citizen movement while incarcerated (Docket Entry 3 at 3, 8), is unpersuasive. The sovereign citizen movement has long espoused anti-governmental views, including disavowing government authority over its adherents, something that raises unique dangers within prisons. *See, e.g., Pacheco v. Wilkes Cnty. Courthouse*, No. 5:22-CV-00190-MR, 2023 WL 2978963, at *2 (W.D.N.C. Apr. 17, 2023) ("The sovereign citizen movement is premised on a theory that federal, state, and local governments are illegitimate and thus, laws and regulations enacted by

9

those bodies are unenforceable.").[6] The FBI has also labeled this "movement" a "domestic terrorist" group. *See Caetano v. Internal Revenue Serv.*, No. 122CV00837JLTSAB, 2023 WL 3319158, at *2 n.1 (E.D. Cal. May 9, 2023) ("The FBI has labeled the sovereign citizens a domestic terrorist group."); *see also* FBI's Counterterrorism Analysis Section, *Sovereign Citizens A Growing Domestic Threat to Law Enforcement* (Sept. 1, 2011), *available at* https://leb.fbi.gov/articles/featured-articles/sovereign-citizens-a-growing-domestic-threat-to-law-enforcement. In light of this, the Court concludes that it would be self-evident to an ordinary person that participation in the sovereign citizen movement—whose central tenant is that its adherents are outside the law—posed a security risk in prison. An ordinary person would know that the sovereign citizen movement is a group that risks the security of North Carolina prisons and thus falls within the definition of "Security Risk Group." Nor, for the reasons set forth above, does it appear to the Court that A-14 was applied arbitrarily here. For all these reasons, Petitioner's due process ground for relief should be denied.

## II. RLUIPA

Petitioner also contends that the relevant prison disciplinary conviction violated his religious rights under RLUIPA. (Docket Entry 2, Ground One.) This ground also lacks merit.

---

[6] *See, e.g., Ferguson-El v. Horton*, No. 7:16-CV-00120, 2016 WL 7031804, at *4 (W.D. Va. Dec. 1, 2016) ("Sovereign Citizens are an anti-government group recognized as a security threat group"); *Colar v. Heyns*, No. 1:12-CV-1269, 2013 WL 141138, at *4 (W.D. Mich. Jan. 11, 2013) ("Given the fundamental belief of the sovereign-citizen movement—that the government lacks the authority to govern them—the MDOC has a patently obvious penological interest in barring inmate meetings and communication that would advance the movement's beliefs. The interest in preserving order and authority in the prison is self-evident.") (citation and quotation omitted).

10

Case 1:22-cv-00514-WO-JLW   Document 14   Filed 07/10/23   Page 10 of 16

The Fourth Circuit Court of Appeals has set forth an inmate's burden for demonstrating a violation of RLUIPA as follows:

> Under RLUIPA, the inmate bears the initial burden of establishing that a prison policy substantially burdens his or her ability to practice in accordance with a sincerely held religious belief. *See Incumaa v. Stirling*, 791 F.3d 517, 525 (4th Cir. 2015). While RLUIPA does not define "substantial burden," we have held that the term has the same meaning as it does in the First Amendment context. *See Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006). And in that context, "a substantial burden is one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs or one that forces a person to choose between following the precepts of her religion and forfeiting governmental benefits, on the one hand, and abandoning the precepts of her religion on the other hand." *Id.* (cleaned up).
>
> Once the inmate makes the requisite initial showing, the burden shifts to the government to show that the prison policy is the least restrictive means of furthering a compelling governmental interest. *See* 42 U.S.C. § 2000cc-1(a); *Lovelace*, 472 F.3d at 189. This is a strict scrutiny standard, requiring "the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting party." *Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 864, 190 L.Ed.2d 747 (2015) (cleaned up); *see also Couch v. Jabe*, 679 F.3d 197, 203 (4th Cir. 2012). While this is an "exceptionally demanding" standard, *Holt*, 135 S. Ct. at 864, Congress nonetheless anticipated that courts would apply it with "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources," *Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (citing 146 Cong. Rec. 16698, 16699 (2000) (joint statement of Sen. Hatch and Sen. Kennedy on RLUIPA)).

*Greenhill v. Clarke*, 944 F.3d 243, 251 (4th Cir. 2019).

The Court concludes that Petitioner has not met his initial burden of demonstrating a sincerely held religious belief substantially burdened by a prison policy, because the sovereign

citizen movement—a group which claims to be outside of the law—is not a religion and his beliefs about it are not religious in nature. *See Love v. N.C. Dep't of Pub. Safety*, No. 5:19-cv-00075-MR, 2020 WL 6050583, at *3-4 (W.D.N.C. Oct. 13, 2020) (observing that "Sovereign Citizens are widely recognized as a security threat group in prisons because the group attempts to undermine governmental authority." and reaching the same conclusion) (collecting cases); *United States v. Hutson*, No. 16-CR-00186, 2018 WL 345316, at *3 (D. Colo. Jan. 10, 2018) (finding sovereign citizen views were not religious in nature). In fact, Petitioner does not even contend that the sovereign citizen movement is a religion. Instead, he contends that he is "a Moorish American National and citizen of the Moorish American National Government and his religion is under the Moorish Science Temple of America." (Docket Entry 11 at 2.) However, Petitioner's A-14 prison disciplinary conviction was for possessing sovereign citizen movement material, not for possessing material related to the Moorish Science Temple.[7]

Moreover, in defending against this claim, Respondent has filed an affidavit from Ken Smith, Chief of Security for the Department of Public Safety, Division of Adult Corrections, Prisons. (Docket Entry 9, Ex. 2.) Smith states

> 4. "Sovereign Citizens" are categorized as a Security Risk Group by Prisons. Factors justifying this categorization include the history and purpose of the movement; the propensity for violence by its adherents; specific illegal or prohibited acts that can be attributed to the group as an entity; and the degree of threat of the group to the community or to facility security. More specifically, Sovereign Citizens are anti-government extremists who believe that even though they physically reside in the US, they are separate or "sovereign" from the United States. They

---

[7] Consequently, any sub-arguments Petitioner may be intending to raise contending that he was the subject of discrimination based on his religion are also unpersuasive. (*See, e.g.*, Docket Entry 3 at 4.)

12

have a documented history of anti-government rhetoric and actions, up to and including acts of violence. Sovereign Citizens also may participate in illegal activities including engaging in fraudulent transactions, placing retaliatory liens against government officials, and other acts of "paper terrorism."

5. "Sovereign Citizens" present unique concerns within prison facilities due to the fact that their underlying ideology is grounded in a disavowal of any government authority over them. On that basis, Sovereign Citizens may deny or challenge the legality and ability of courts to convict them of crimes and of correctional authorities to keep them incarcerated. Correctional facilities may also be locations where anti-governmental ideology is easily spread among disaffected offenders. Prisons therefore has a significant interest in reducing, if not eliminating, Sovereign Citizen behaviors and materials within our facilities.

6. Sovereign Citizens will often refer to themselves as "indigenous people" and reference the "straw man", "uniform commercial codes (UCC)", and the Fourteenth Amendment. *Some, although not all, Black Sovereign Citizens may cloak their anti-government ideology by claiming they are "Moors" belonging to the Moorish Science Temple, which is a religious group recognized by Prisons. However, true adherents of the Moorish Science Temple faith do not condone the anti-government ideologies of Sovereign Citizens.*

. . . .

8. The following elements found in the recovered documents are known indicators of Sovereign Citizen involvement:

> • References to "natural rights" and to all interactions with governments as constituting contracts or being based in contracts
>
> • Denial of status as a citizen of the United States or the State of North Carolina, and denial of any governmental jurisdiction over the person
>
> • Reference to the Uniform Commercial Code

13

> • Utilization of alternative forms of the same name and utilization of Latin terms such as "ex rel" and "in propia persona"
>
> • Intention to mark the pages with a thumbprint in red ink
>
> • Reference to being a "Moor" or a "sovereign Moorish American national"
>
> *9. More concerning are the pages instructing others on how to engage in similar Sovereign Citizen behaviors, as well as the form intended to be used to disavow legal obligations and governmental authorities. These are exactly the sort of documents that Prisons has a clear interest in preventing from being circulated within our facilities.*

(Docket Entry 9, Ex. 2 (emphasis added).) Consequently, the fact that the papers confiscated from Petitioner reference both the Moorish Science Temple faith and the anti-government sovereign citizen movement is insufficient to meet the threshold burden for Petitioner's claim. The Court concludes that Petitioner has failed to meet his burden of demonstrating that his A-14 conviction resulted in an inability to practice a sincerely held religious belief.

Additionally, even if adherence to the sovereign citizen movement were considered a valid religious belief, which is not the case, it is well settled that "prison security is a compelling state interest, and that deference is due to institutional officials' expertise in this area." *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005). And, as relevant here, "prison officials need not wait for a problem to arise before taking steps to minimize security risks." *Hadi v. Horn*, 830 F.2d 779, 785 (7th Cir. 1987). Given the level of deference afforded to prison officials here, the confiscation of Petitioner's sovereign citizen documents and then charging him for participating in a security risk group[8] was the least restrictive means to further a compelling

---

[8] Petitioner's extensive disciplinary history was taken into account in assessing his sanctions. (Docket Entry 9, Ex. 1 at 12; *supra* note 4.)

14

governmental interest, *i.e.* prison safety. *See Edwards v. King*, No. 7:21-CV-00047, 2022 WL 875039, at *4 (W.D. Va. Mar. 23, 2022) (agreeing that "even if [the petitioner's] particular [sovereign citizen movement] beliefs can be considered religious in nature, they did not violate his rights under RLUIPA because the confiscation of sovereign citizen materials was the least restrictive means of effecting the VDOC's compelling interest in institutional security").[9]

### III. Eighth Amendment

Petitioner further contends that the prison violated his rights against cruel and unusual punishment. (Docket Entry 2, Ground Two.) This ground also lacks merit.

More specifically, Petitioner contends that the loss of twenty days of good time credits as the result of his disciplinary conviction violates the Eighth Amendment. (Docket Entry 2, Ground Two.) The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. The Eighth Amendment reaches official conduct including excessive sentences and inhumane treatment while in prison, as well as conditions of confinement. *Williams v. Benjamin*, 77 F.3d 756, 761(4th Cir.1996). The loss of good time credits in the limited number of credits at issue here is typical, not unusual. The mild sanctions imposed here do not impose the sort of hardship the Eighth Amendment is intended to reach.

---

[9] The result is the same here under a First Amendment analysis. To state a free exercise claim under the First Amendment, a plaintiff must allege facts sufficient to show that he held a sincere religious belief, and that the official action or regulation substantially burdened his exercise of that belief. *See Hernandez v. Comm'r*, 490 U.S. 680, 693, 699 (1989). A prison policy that substantially burdens an inmate's ability to practice his religion withstands a First Amendment challenge when it is "reasonably related to legitimate penological interests." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) (citation omitted). As explained above, no sincere religious belief was substantially burdened here. *See also Rogers v. N. Carolina Dep't of Pub. Safety*, No. 1:19CV417, 2022 WL 3283990, at *6 n.8 (M.D.N.C. Aug. 11, 2022) ("This court need not conduct a separate analysis under the First Amendment because RLUIPA requires a higher degree of proof than the First Amendment standard.").

Accordingly, Petitioner has failed to state a claim pursuant to the Eighth Amendment. *See Leblanc v. Pettiford*, No. C.A. 606-1194-GRA, 2007 WL 465566, at *5 (D.S.C. Feb. 7, 2007) (collecting cases); *Riggleman v. Ziegler*, No. CIV.A. 5:11-0868, 2012 WL 4119674, at *6 (S.D.W. Va. Aug. 22, 2012); *see also Eugene v. Klecker*, 636 F.2d 250, 251 (8th Cir. 1980) (holding that the loss of good time credits was not an Eighth Amendment violation).

## Conclusion

For the reasons set forth above, the Petition should be denied. Neither the appointment of counsel, nor an evidentiary hearing, nor discovery are warranted in this matter.

**IT IS THEREFORE RECOMMENDED** that Respondent's motion for summary judgment (Docket Entry 8) be **GRANTED**, that Petitioner's petition (Docket Entry 2) be **DENIED**, that Judgment be entered dismissing this action, and that, there being no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction nor a debatable procedural ruling, a certificate of appealability not issue.

/s/ Joe L. Webster  
United States Magistrate Judge

July 10, 2023  
Durham, North Carolina